UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREEN GENIE, INC. and ALVIN ALOSACHI,

                      Plaintiffs,                          Case Number 21-10790

v.                                            Honorable David M. Lawson

CITY OF DETROIT, CITY OF DETROIT
BOARD OF ZONING APPEALS, and CITY OF
DETROIT BUILDINGS, SAFETY
ENGINEERING AND ENVIRONMENTAL
DEPARTMENT,

                      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The City of Detroit's zoning laws prohibit the location of a medical marijuana dispensary within a "drug-free zone," which includes the area within 1,000 feet of a school. Plaintiffs Green Genie, Inc.'s and Alvin Alosachi's permit application to operate its marijuana distribution facility was denied under this provision. After unsuccessfully pursuing administrative and state court appeals, the plaintiffs sued the City, alleging a violation of their rights under the Due Process Clause of the Fourteenth Amendment and contending that the City granted permits to other applicants that did not meet the 1000-foot threshold. The City has moved for summary judgment on all claims, arguing that the plaintiffs' reading of the applicable zoning provisions ignores the plain statutory language, which bars their intended use, and they have not produced any evidence of a procedural or substantive defect that rendered the process unconstitutional. The Court agrees and will grant the motion and dismiss the complaint.

I.

Although other issues are found in the case, a main focus of the dispute is on the manner of measuring the distance between the two relevant "zoning lots" as prescribed by the zoning ordinances.  Most of the underlying historical and geographical circumstances of the case are undisputed.  The litigation focuses on the application and interpretation of those zoning ordinance provisions.

A. Plaintiff's Special Land Use Application

Plaintiff Green Genie, Inc. is a Michigan corporation owned by plaintiff Alvin Alosachi. The company was formed by Alosachi with the goal of opening a medical marijuana provisioning center in the City of Detroit.  The defendants are the City of Detroit, the City's Buildings, Safety Engineering and Environmental Department (Building Department), and its Board of Zoning Appeals (BZA).

On October 14, 2018, plaintiff Alosachi applied to the Building Department for a special land use permit allowing Green Genie to establish a medical marijuana provisioning facility in the City at 16711 Mack Avenue.  The application was denied two days later on the ground that the department's review had "resulted in a determination that the proposed Medical Marihuana Provisioning Center Facility (MMPCF) site is located within 872.8 feet of a 'Drug Free Zone' known as St. Clare of Montefalco School addressed as 16231 Charlevoix, Gross Pointe Park, MI 48230."  Included with the letter was a tax record from the City of Grosse Pointe Park for the property identified by tax parcel ID 3900040147000, which was classified in the tax record as "School," and which indicated that the parcel comprised platted "lots 147 to 151," on which the St. Clare of Montefalco School building was located, along with platted "lots 161 to 171," on which the St. Clare church building was located, and a "20 foot alley adjacent to lots 152 to 167."

The City submitted aerial photographs of the properties in question, which it says verify that the shortest distance between the property on which the plaintiff intended to operate and the nearest corner of the parcel on which the school and church were located is 869.61 feet.  That measurement represents the distance between the nearest two points of the plaintiffs' proposed dispensary site and the north-northeast corner of the parcel on which the church and school buildings are located.  The City also points out that the church premises in their entirety include a gymnasium building, which is located on a separate tax parcel identified with a different parcel ID, and which did not figure in the measurement.

In a declaration prepared for this case, Building Department Plan Reviewer and Building Inspector Sherita Elliott attested that, when she reviewed the plaintiff's 2018 application, she concluded, after reviewing the Grosse Point property records and corresponding aerial photographs, that the available information "showed that the St. Clare of Montefalco School and Church in Grosse Pointe Park were located together on a single parcel, with its northwest property line at Mack and Whittier Streets, and that this parcel was less than 1,000 feet from the zoning lot containing Plaintiffs' proposed use."  "For this reason, [she] determined that Plaintiffs' proposed medical marijuana facility was within a drug-free zone, and could not be approved under the City's zoning regulations."

On October 17, 2018, Alosachi appealed the Building Department's decision denying his special land use application.  At a hearing before the Board of Zoning Appeals, Building Department representative Jada Philson testified that the school and church buildings associated with St. Clare both are located on the same parcel, as denominated in the City of Grosse Pointe tax records.  During her testimony, Philson conceded that a gymnasium building that also was

associated with the church was in fact on a separate parcel, but she reiterated that the church building and the school building are on the same parcel.

It is undisputed that the entire school premises in question is within the City of Grosse Pointe, not the City of Detroit.  However, the City's attorney at the BZA hearing explained that its corporation counsel had issued a legal opinion stating that the spacing ordinance properly could be applied with respect to "sensitive uses" located up to 1,000 feet beyond the city line, when determining whether a marijuana dispensary was proposing to operate within a "drug-free zone." The board then affirmed, by a vote of eight to one, the determination that the plaintiff's application for a special land use properly was denied because the proposed site was nearer than 1,000 feet to a school.

The BZA ruling, however, was just the beginning.  The dispute tracked through an exhaustive course of subsequent administrative and judicial hearings and appeals.  On March 9, 2019, the plaintiffs filed suit in the Wayne County, Michigan circuit court, seeking a judicial reversal of the BZA decision.  The state court issued an order dismissing the complaint on June 6, 2019, and the Michigan Court of Appeals denied an application for leave to appeal on November 1, 2019.

Separately, while their judicial appeal was pending, the plaintiffs asked the BZA for reconsideration of its decision, and a second hearing was held on April 23, 2019.  The board summarily denied the plaintiffs' request for rehearing after concluding that no new information had been presented that was not considered at the earlier hearing.  The plaintiff then filed a second suit in the Wayne County court, which issued an order remanding the case to the BZA for further proceedings, because the court found that the administrative record did not clearly indicate whether the board had considered "potentially new evidence" produced by the plaintiffs.

On April 14, 2020, after the case was remanded, the BZA held a third hearing.  During that hearing, the plaintiffs presented a "property sketch" that indicated that the distance from the plaintiffs' site to the corner of the "lot" on which the school building was located was more than 1,000 feet.  However, the City's Building Department representative, Ms. Philson, reiterated the position that the pertinent measurement was to the corner of the entire parcel comprising the platted lots of both the school and church buildings and once again affirmed that by that reckoning the separation of the properties was well short of the 1,000-foot minimum.  The Board adjourned the hearing to allow Building Department representatives to review the plaintiffs' proffered property sketch.  At a continued hearing on July 21, 2020, the City's corporation counsel testified and explained, once again, that the "relevant legal boundary" for measuring separation was the nearest boundary of the single tax parcel which comprised both the school and church buildings, and that the plaintiff's property sketch did not comport with this rule because it measured the distance to the constituent lot on which the school building was located, bypassing and overlooking the adjacent church lot that was in the same parcel.  The BZA then voted again — this time unanimously — to affirm the Building Department's decision denying the application.  The plaintiff requested a rehearing of the second BZA decision, but the request for rehearing was denied on July 28, 2020, after the Board found that no new information had been presented.

After the fifth and final hearing before the BZA, the plaintiffs returned to the Wayne County court and filed a motion seeking reversal of the decision.  The state court heard oral argument on the motion and issued a decision affirming the BZA ruling on February 18, 2021.  The plaintiffs' application for leave to appeal was granted by the Michigan Court of Appeals on May 12, 2021.  According to the current publicly available docket information, the appeal now is

fully briefed and was set for remote oral argument on April 5, 2022.  For now, the matter remains pending before the state court of appeals.

## B. City Zoning Ordinance

Section 50-3-535(b)(1) of the Detroit City Code states that "[a] medical marihuana caregiver center or medical marihuana provisioning center facility must not be located in any of the following: (1) Within a drug-free zone, as defined in Section 50-16-172 of this Code. . . ." Section 50-16-172 of the City Code defines the term "drug-free zone" as "[a]n area that is within 1,000 radial feet of the *zoning lot* of," among other things, "[a] school, as defined in Section 50-16-381 of this Code."  (Emphasis added).  Section 50-16-381, in turn, defines the term "school" as including "[p]ublic or private schools at the primary, elementary, middle, junior high, or high school level that provide state-mandated basic education," and further states that "[e]xamples include public and private daytime (elementary, junior high and senior high) schools, and military academies."  The Code also provides an express definition for the phrase "zoning lot," a/k/a "lot, zoning," which is used in the definition of "drug-free zone."  Section 50-16-284 defines "zoning lot" as follows:

> A single tract of land located within a single block that at the time of filing for a building permit is designated by its owner or developer as a tract to be used, developed, or built upon as a unit under single or unified ownership or control. Such lot shall have frontage on a street, or permanent means of access to a street, other than an alley, and may consist of:
>
> (1)      A single lot of record;
>
> (2)      A portion of a lot of record;
>
> (3)      A combination of complete lots of record, of complete lots of record and portions of lots of record, or of portions of lots of record;
>
> (4)      A parcel of land described by metes and bounds.

Detroit City Code § 50-16-284.  Finally, the term "parcel" also has an express definition under the Code, which is "[a] continuous portion of land that is assigned a unique identification number by the Office of the Assessor."  Detroit City Code § 50-16-341.

According to the City, those definitional terms mean that the "zoning lot" used for determining the outer boundaries of a "drug-free zone" may comprise, as pertinent to this case, a "single tract of land located within a single block," which is identified by a municipal taxing authority with a unique parcel ID number, and which may consist of one or more "lots of record" or "portion[s] of a lot of record."  The City also regards the land unit "lot of record" as an alternative descriptor for a "platted lot."

The City's Building Department representative attested that the practice in the department consistently has been to regard the terms "zoning lot" and "parcel" or "tax parcel" as synonymous when reviewing applications for medical marijuana provisioning center permits, and to reckon distance by measuring from the nearest boundaries of the relevant tax parcels to determine the minimum separation between the proposed use and any nearby sensitive use.  Jayda Philson decl. ¶¶ 9-10, ECF No. 14-2, PageID.203 ("To summarize, under the Detroit City Code, a 'zoning lot' may be several lots of record or a 'parcel,' which is defined to be equivalent to a tax ID parcel (which itself may consist of one or many lots of record.  In reviewing applications for proposed medical marijuana uses and applying the above regulations to determine if a proposed medical marijuana use is located in a drug-free zone, [Building Department] staff under my direction would typically treat 'zoning lot' and 'tax ID parcel' as synonymous. [Building Department] staff would typically measure from the property line of the tax ID parcel containing the use to the tax ID parcel of any sensitive use, such as a school, listed in Section 50-3-533 of the Detroit City Code.").

C. Other Marijuana Dispensaries

The plaintiffs contend that two other medical marijuana provisioning centers were treated differently and had their applications approved, despite the fact that, according to the plaintiffs, their facilities are also located within the supposed "drug-free zone" around the St. Clare of Montefalco School or other schools, based on the City's measurement system. Those other medical marijuana providers are identified by the plaintiffs as Mack Wellness and Detroit Roots.

Detroit Roots is located at 12604 East Jefferson Avenue, in Detroit. The plaintiffs assert that the Detroit Roots "parcel" has less than 1,000 feet of separation from the "parcel" on which a parking lot of a different school is located. City Building Department representative Charles Reed attested that Detroit Roots applied for a marijuana provisioning center permit in 2016. When the application was reviewed, it was determined that the legal address of the proposed facility was 12600 East Jefferson Avenue, which was assigned tax parcel ID 21000394-5. Reed said that the nearest school to that parcel was the Golightly Career and Technical School, which was located on a parcel that included both the school building and a parking lot. Reed determined that the minimum distance between the two parcels was 1,068.7 feet, and the application accordingly was approved. However, Reed conceded that, on July 6, 2017, months after the application was approved, the Detroit Roots parcel was combined with two adjacent parcels into a single new parcel, assigned the new tax ID 21000392-5. Reed also conceded that the minimum distance from the new parcel to the Golightly Technical School was less than 1,000 feet, but he attested that the new parcel did not exist when the application was evaluated, and the calculations that were made at the time when the application was granted were consistent with the City's espoused methods of measurement.

Mack Wellness is located at 16001 Mack Avenue in Detroit. The plaintiffs assert that the Mack Wellness "parcel" has less than 1,000 feet of separation from the "parcel" on which a park

or playground that is used by St. Clare students is located.  Sherita Elliott, another Building Department representative, attested that when Mack Wellness applied for a marijuana provisioning center permit in 2016, she determined that the nearest problematic parcel to the proposed location was a parcel on which a parking lot associated with the St. Clare school was located.  However, Elliott determined that the minimum distance between the Mack Wellness parcel and the St. Clare School parking lot parcel was more than 1,000 feet, and the application was granted.  Elliott conceded, however, that there was a different parcel, which appeared during her review to contain a "large grassy area."  She believed that land was either associated with adjoining residential properties or designated as a public park by the City of Grosse Pointe.  Elliott did not consider the "grassy area" parcel to be relevant to the application because she was unaware at the time that it included a playground "used by students at St. Clare School."  Elliott also noted that a public park or recreation area only would fit the definition of a "drug-free zone" under the City Code when designated as such in the City of Detroit Recreation Department Master Plan.  The Master Plan, though, would not include any properties outside the City of Detroit.  Jayda Philson testified at her deposition that the Building Department did not know at the time that the "grassy area" parcel also was owned by the St. Clare School, and that the Mack Wellness parcel was less than 1,000 feet from the grassy parcel.

### D.  Proceedings

On April 8, 2021, the plaintiffs filed their complaint pleading claims via 42 U.S.C. § 1983 for alleged violations of their federal constitutional rights to procedural and substantive due process and equal protection.  After discovery closed, the defendants filed their motion for summary judgment.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Alexander*, 576 F.3d at 558 (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). Instead, that party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for" that party. *Anderson*, 477 U.S. at 252. If the non-moving

party, after sufficient opportunity for discovery, is unable to meet its burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## A.  Equal Protection

The plaintiffs contend that the City treated them differently than other marijuana dispensary permit applicants who were located within 1000 feet of a school and still had their permits issued.  The defendants argue that the plaintiffs cannot prevail on an equal protection claim because they did not have a constitutionally protected property interest in a permit.

To prevail on an equal protection claim, the plaintiffs must show that "the government treated [them] 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Township of Shelby, Michigan*, 470 F.3d 286, 299 (6th Cir. 2006)).  Where, as here, a plaintiff does not contend that a municipality's actions burden any fundamental right and has not suggested that he is a member of any suspect class, then the plaintiff still may proceed as a "class of one," but to do so he must put forth evidence that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

That is no easy task, because "there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary." *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).  And absent the deprivation of a fundamental right or membership in a suspect class, "[i]f there is any reasonably conceivable

state of facts that could provide a rational basis for the state's conduct, then the state has not violated the constitution." *Systematic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 181 (6th Cir. 2015) (citations and quotations marks omitted).

In the Sixth Circuit, a class-of-one plaintiff may take one of two routes to show the absence of a rational basis: he can (1) "negate every conceivable basis which might support the government action," or (2) offer evidence that "demonstrat[es] that the challenged government action was motivated by animus or ill-will." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012) (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)).

Addressing the second option, the plaintiffs argue that two other dispensaries *intentionally* were treated more favorably despite similar spacing problems. But that argument is not sustained by the record. First, the unrebutted testimony by Building Department representative Charles Reed shows that when the application by Detroit Roots was filed and reviewed, there was no relevant spacing problem because the single parcel on which Detroit Roots was located was more than 1,000 feet from the nearest parcel housing any school. That distance was reduced only after the application was reviewed and granted when the parcel in question was merged with two adjacent parcels that had not been relevant to the application. The plaintiff has not put forth any evidence rebutting the City's proofs that, at the time it was reviewed, the Detroit Roots application did not demonstrate the same separation defect that beset the plaintiffs' permit application. Therefore, Detroit Roots is not a relevant comparator for a showing of disparate treatment.

Second, the admission by Building Department examiner Sherita Elliott that she overlooked spacing concerns between the premises of Mack Wellness and an outdoor "grassy area" or "park" that later (during this litigation) was found to belong to St. Clare Montefalco School establishes, at most, that the ordinance may have been applied erroneously in a prior

instance to allow a use that should have been prohibited.  But mere error and inconsistent or even haphazard application of a statute are not enough to make out a viable equal protection claim based on allegations of animus or ill will.  Instead, the plaintiff must show deliberate, intentional misapplication, for which the record here disclosures no proofs.

"Mere error or mistake in judgment when applying a facially neutral statute does not violate the equal protection clause.  There must be intentional discrimination." *E & T Realty v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987) (citing *Snowden v. Hughes*, 321 U.S. 1, 8 (1944) ("[W]here the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws.")).  "The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state law into equal protection claims," and "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." *Ibid.*  "The fact that administrators in certain areas may have made errors in the application of the regulations does not mean that the correct evaluation made in [the plaintiff's] case violates the Equal Protection Clause." *Cernuda v. Neufeld*, 307 F. App'x 427, 433-34 (11th Cir. 2009); *see also Seven Star, Inc. v. United States*, 873 F.2d 225, 227 (9th Cir. 1989) ("A claim that an administrative agency has made different decisions in different cases, in different years, does not give rise to a claim for relief on equal protection grounds. Assuming arguendo that the plaintiffs could successfully show some inconsistency in decisions involving these two different industries, equal protection principles should not provide any basis for holding that an erroneous application of the law in an earlier case must be repeated in a later one. Moreover, a decision by an administrative agency in one case does not mandate the same

result in every similar case in succeeding years."). There is no evidence of intentional discrimination in this record.

Nor can the plaintiffs prevail on the first part of the class-of-one theory. Their proofs do not negate every conceivable reasoned basis for the permit denial. The Sixth Circuit "generally view[s] class-of-one claims with skepticism given the potential to 'provide a federal cause of action for review of almost every executive and administrative decision made by state actors.'" *Shavers v. Almont Township, Michigan*, 832 F. App'x 933, 937-38 (6th Cir. 2020) (quoting *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461, 462 (6th Cir. 2012)). "Thus, [courts in this circuit] impose a 'heavy burden' on a plaintiff to overcome rational basis review." *Ibid.*

The undisputed facts lead ineluctably to the conclusion that the City's denial of the plaintiffs' permit application was based on a straightforward application of the zoning ordinance and the City's reasonable interpretation of its measuring rules. It is undisputed that the zoning ordinance prohibits operation of a medical marijuana provisioning center on any premises that falls within 1,000 radial feet of the "zoning lot" occupied by a "school." There also is no dispute that St. Clare Montefalco School is a private, church-run "school" as defined by the ordinance.

The plaintiffs take issue with the construction of the term "zoning lot," but the City's zoning officials applied a reasonable construction of that term when they determined that the relevant "zoning lot" was defined by the union of all contiguous "platted lots" included in the single tax parcel identified by the City of Gross Pointe taxing authority with tax parcel ID 3900040147000. The plain text of the ordinance defines the term "zoning lot" as "[a] single tract of land located within a single block that at the time of filing for a building permit is designated by its owner or developer as a tract to be used, developed, or built upon as a unit under single or unified ownership or control." City Code § 50-16-284. It is undisputed that the entire property

-14-

identified by tax parcel ID 3900040147000 is owned and operated or controlled by a single entity, which is the Catholic Archdiocese of Detroit. The fact that the entire parcel is designated in the tax record with a singular classification as a "School" suggests that the Archdiocese uses the entire property in a unified fashion to serve the operational purposes of the St. Clare Montefalco School. The ordinance also states that a "zoning lot" must "have frontage on a street, or permanent means of access to a street, other than an alley." City Code § 50-16-284. The parcel plainly meets that requirement. Finally, the ordinance states that a zoning lot "may consist of: (1) A single lot of record; (2) A portion of a lot of record; [or] (3) A combination of complete lots of record, of complete lots of record and portions of lots of record, or of portions of lots of record." City Code § 50-16-284. It is undisputed that the parcel here consists of a combination of "lots of record," which are identified in the tax record as platted "lots 147 to 151," on which the St. Clare of Montefalco School building is located, along with platted "lots 161 to 171," on which the St. Clare church building is located, and a "20-foot alley adjacent to lots 152 to 167." Tax Assessment Record, ECF No. 14-5, PageID.228. Those lots all together form a contiguous, rectilinear unit, with their outermost perimeters defining the boundaries of tax parcel ID 3900040147000.

The geographical boundaries of that parcel are not in dispute, and the plaintiffs do not take issue with the physical situation of that monolithic parcel in relation to their own. Instead, the plaintiffs insist that the relevant point of reckoning is to the boundary of a subsidiary portion of that parcel including only the platted lot or lots on which the school building is situated. But that position is contradicted by a natural reading of the plain text of the zoning ordinance, which provides that a "zoning lot" can be composed from one or more lots under unified ownership and control. The state court in the second lawsuit reached the same conclusion, for the same reasons.

But even if that point is debatable, the City's reading of the ordinance's definition of "zoning lot" is a reasonable construction that follows from its plain language and the statutory definitions of the operative terms.  The application of the City's construction of the ordinance to the undisputed facts follows naturally from that reading.  The zoning decision therefore was supported by rational, readily discernible grounds, which were based on a fair consideration of the relevant and undisputed facts that were presented to the zoning officials, the Board of Zoning Appeals, and the state courts.  Because there was a rational basis for the decision, the plaintiffs cannot prevail on an equal protection claim, since they have failed to negate every conceivable basis for the zoning ruling.

### B.  Procedural Due Process

The defendants argue that the procedural due process claim cannot proceed because it is undisputed that the plaintiffs' permit application was afforded exhaustive procedural consideration through five separate hearings before the zoning board and two judicial appeals of the administrative decisions.  The plaintiffs counter that their procedural rights were violated when the City failed or refused to forward the application to a dedicated committee responsible for assessing marijuana provisioning permit applications.

A procedural claim under the Due Process Clause of the Fourteenth Amendment usually involves the deprivation of a liberty or property interest by the government without appropriate procedural protections, most commonly fair notice and a fair opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The Clause protects "'certain substantive rights — life, liberty, and property'" from loss "'except pursuant to constitutionally adequate procedures.'" *Chandler v. Village of Chagrin Falls*, 296 F. App'x 463, 468 (6th Cir. 2008) (quoting *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985)).

The core guarantees of due process are notice and the opportunity to be heard.  *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).  "The hearing must be 'at a meaningful time and in a meaningful manner.'"  *Ibid.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  The "recipient [must] have timely and adequate notice detailing the reasons for [a governmental action], and an effective opportunity to [contest the decision] by confronting any adverse witnesses and by presenting his own arguments and evidence orally."  *Id.* at 267-68, 90.  "'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'"  *Loudermill*, 470 U.S. at 541 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

However, procedural due process rights only attach once a plaintiff asserts a liberty or property interest.  *Almario v. Attorney General*, 872 F.2d 147, 151 (6th Cir. 1989).  To establish a liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right.  *Ibid.*

The plaintiffs cannot prevail on a procedural due process claim because (1) they have not identified any constitutionally protected property interested of which they were deprived by the denial of their special land use application, and (2) the claim that the City refused to forward the application to a particular committee is insufficient as a matter of law to establish a cognizable procedural due process violation.

First, the plaintiffs had no protected property interest in obtaining a special land use permit, because it is clear from the undisputed record that they never had any legitimate entitlement to such a use, which expressly is prohibited by the City's zoning ordinance.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quotations omitted). "[A] pending application for a building permit does not create a property interest where the zoning authorities have discretion to deny the application or limit the use of property." *Tuscola Wind III, LLC v. Almer Charter Twp.*, 327 F. Supp. 3d 1028, 1042 (E.D. Mich. 2018). "[A] protectible property right exists only if a plaintiff has a legitimate claim of entitlement or a justifiable expectation in the approval of his [p]lan" for use of the property, and the Court "must look to state zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation exists." *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005). "Such a property interest would exist [] if the board's discretion were so circumscribed that approval of the plaintiff's proposed use of the property became mandatory once he complied with the minimal requirements imposed on him." *Brown v. City of Ecorse*, 322 F. App'x 443, 445-46 (6th Cir. 2009).

In this case, the relevant provisions of the zoning ordinance did *not* mandate that the Building Department must grant the application once submitted. In fact, based on the undisputed geographic circumstances of the properties in question discussed above, the ordinance mandated that the application be *denied*, because it proposed an explicitly prohibited use. Because it is undisputed that the plaintiffs' proposed dispensary site is within 1,000 feet of the parcel assigned to St. Clare Montefalco School, they never could have harbored any reasonable expectation that their application for a special land use would be granted. The case law on point in the Michigan courts is not extensive, but the available state court decisions squarely addressing the question have held that the City's construction of the "drug-free zones" ordinance is reasonable and correct. *E.g.*, *Mazloum, Inc. v. City of Detroit*, No. 17-012726 (Wayne Cty. Cir. Ct. May 8, 2018) (ECF 14-24) (upholding denial of special use application).

-18-

The plaintiffs' argument that the statute cannot be read to apply to spacing between properties located inside and outside the city limits is a non-starter.  The plaintiffs insist that the ordinance does not expressly contemplate spacing requirements relative to properties beyond the city boundaries, but it also does not expressly *limit* its spacing requirements to properties entirely within the city limits.  The ordinance simply provides that a regulated property (entirely within the City's jurisdiction) cannot be used to operate a marijuana dispensary if it is within 1,000 feet of the premises of "a school."  The plaintiffs' property runs afoul of that proscription, and their proposed use is prohibited.  State courts confronting this interpretational question have reached the same result.  *E.g.*, *Mazloum*, *supra*.

The plaintiffs assert that the most recent decision from the Wayne County, Michigan circuit court endorsed their interpretation of the zoning ordinance where the state court observed in the course of its oral ruling: "It's undisputed that the proposed facility *is not within the area of a drug-free zone, not within a thousand feet if measured from the facility to the nearest lot on which the school is located*.  The school is located on Lots No. 147 through 151 and these are the, for lack of a better word I'll call them the geographic lots as indicated by legal descriptions."  Hr'g Tr. (Jan. 28, 2021), ECF No. 18-10, PageID.712 (emphasis added).  However, that argument — which cites an isolated and perhaps inartful articulation of premises by the state court — ignores the expansive discussion on the record that immediately followed that preliminary acknowledgement of the plaintiffs' position, wherein the state court expressly *rejected* the plaintiffs' proposed construction of the term "zoning lot" and found that the City's zoning authorities had put forth a reasonable construction of the definitional provisions in the zoning ordinance:

> The key, now a drug-free zone according to the ordinance is defined as an area that's within 1000 radial feet of the zoning lot of a school, so the key in the Court's view is what is the definition of a zoning lot. Appellant's brief deems the school as located on Zoning Lots 147 through 151 and in that by designating them as such

assumes that the school is located on a zoning lot. *But a zoning lot has a specific definition under the ordinance, it's something more expansive than the bare physical description of the zoning lots*.

According to the ordinance a zoning lot is a combination of complete lots of record, of complete lots of record and portions of lots of record, or of portions of lots of record [or] record parcels of land described by metes and bounds. . . .

It's evident from the record below, of the proceedings below that the Board of Zoning Appeals used the broader definition of a zoning lot. The St. Clair [sic] Elementary School is located on a campus and adjacent to it is St. Clair Church, these two parcels are both owned by the Archdiocese of Detroit in providing to its religious community both a church and a religious elementary school.

It's evident that the Board of Zoning Appeals considered the school and the church as located together on a zoning lot, this is evident from the argument of an attorney who represented the school at the hearing and indicated that this was one enterprise jointly owned by the Archdiocese.

And there was extensive discussion on the part of the Board and it's evident that they unanimously accepted the argument of the attorney for the school that viewed the school and the church as basically one unit in the mission of the Archdiocese of Detroit.

*Now the difficulty for the Appellant is that with that broader definition of a zoning lot the edge, the closest edge of the church and school together, the closest edge of the parcel is within, it said less than 1000 feet and therefore within the drug-free zone.*

We review the decision of the Board for the usual statutory grounds whether it's contrary to law, whether it's supported by competent material evidence on the record as a whole, and whether it's the result of caprice. I adopt the, that's not an exact statement of the standard, but that's essentially it. In the Court's view [it] does not have the authority to overrule the discretion of the Board of Zoning Appeals in using the more expansive definition of a zoning lot.

Among the observations made by counsel for the school was that the school and the church both had an identical tax ID number. Now it's true as Appellant [] observes that the statute doesn't refer to a tax ID number, but I view that element as simply being another factor justifying in part the discretion of the Zoning Board in regarding the church and the school as a single entity for purposes of determining what is a zoning lot. We have at least the taxing authority saying in addition to the other circumstances viewing these two institutions as a unit.

*Id.* at PageID.712-715 (emphasis added).  In other words, the state court recognized that, while

there was more than 1,000 feet between the plaintiffs' "lot" and the "lot" on which the school

building is located, there was not more than 1,000 feet between the nearest boundaries of the plaintiffs' "zoning lot" and the school's "zoning lot," as defined by the ordinance, where the phrase "zoning lot" includes, alternatively, an entire block comprised of "a combination of complete lots of record."

The plaintiffs' contention that their application was misrouted to an improper decisionmaker is insufficient as a matter of law to sustain a federal constitutional claim for denial of procedural due process. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). The plaintiffs here had no legitimate entitlement to issuance of a special land use permit. Even if it is assumed that the routing of the application was improper in some way — although undoubtedly it was not — there is no federal constitutional claim made out by the supposed mishandling. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 592 (7th Cir. 2021) ("To the extent FKFJ alleges it was deprived of the process of applying for renewal, since the Village refused to even accept its application, its claim nonetheless fails. Process alone is not a protected interest subject to due process protections."); *Lavite v. Dunstan*, 932 F.3d 1020, 1033 (7th Cir. 2019) ("State and local law can create and confer constitutionally protected liberty and property interests, but state and local procedural protections do not by themselves give rise to federal due process interests.").

Other than giving a person "notice of the case against him and [an] opportunity to meet it," there are no hard and fast rules that prescribe the adequacy of process demanded by the Constitution. *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring)) (internal quotation marks and alteration omitted). Rather, the requirements of due process "are fluid and fact

-21-

dependent." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (citing *Mathews*, 424 U.S. at 334.).   The level of formality depends on a variety of factors, including the claimant's interest affected by the government action, the risk of a mistake causing deprivation, the value of additional safeguards, and the fiscal and administrative burdens additional process might bring. *Mathews*, 424 U.S. at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-271 (1970)).   But in the end, "the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 13 (1979).

Here, the plaintiffs received all the process they were due and then some.   The undisputed record here shows that the permit application was subjected to repeated exhaustive examinations by both administrative and judicial authorities, all of which upheld the denial of the special land use application.   The plaintiffs were afforded ample opportunity to plead their case, and all of the information and arguments that they desired to present were heard and considered by the responsible government officials.   Nothing more was required to constitute a constitutionally adequate process. *Systematic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 184 (6th Cir. 2015).

### C. Substantive Due Process

The plaintiffs also allege that they were denied their right to substantive due process.   The substantive component of the Due Process Clause, like its procedural counterpart, also acts as a check on the power of the government vis-à-vis its citizens.   "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).   It prohibits the government from infringing on "fundamental rights" without sufficient justification. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

"To state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). "What seems to be required is an intentional infliction of injury . . . or some other governmental action that is 'arbitrary in the constitutional sense.'" *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997) (quoting *Lewellen v. Metro. Gov't of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994)).

The defendants argue that this claim cannot succeed because the zoning decision was not arbitrary, capricious, or lacking in rational basis, since it was based on a straightforward application of the plain terms in the zoning ordinance that prohibit the proposed use. The Court agrees. The same reasons discussed above, which demonstrate the rational basis of the zoning decision and defeat the equal protection claim, also bar the substantive due process claim. *Shavers v. Almont Township, Michigan*, 832 F. App'x 933, 939-40 (6th Cir. 2020) ("Because Shavers' remaining claims rise and fall with his equal protection claim, we will address them in summary fashion. Having concluded that the Township's actions survive rational basis scrutiny, we hold, like the district court, that he cannot establish the required 'arbitrary and capricious action' necessary for his substantive-due-process claim." (citing *Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001)).

Similarly, the plaintiffs' claims that City zoning officials erred by granting one or two other applications that ought to have been denied due to similar spacing problems is insufficient as a matter of law to sustain a substantive due process claim, because nothing in the Due Process Clause mandates that City officials are bound to repeat the same errors in considering the plaintiffs' application. *Johnson v. City of Saginaw*, 980 F.3d 497, 514 (6th Cir. 2020) ("[N]either Appellees

nor the district court point to any controlling authority suggesting that the simple misinterpretation and misapplication of a municipal ordinance constitutes a violation of substantive due process. And, we have rejected similar arguments.").

III.

The plaintiffs have not put forth evidence to show that the City's zoning decision was animated by ill will, unsupported by any rational basis, or arbitrary in the constitutional sense. The facts in the record are not seriously contested, and the plaintiffs' strained construction of the definitional terms of the zoning laws simply is inconsistent with a natural reading of the statutory language. The plaintiffs were given ample opportunities to plead their case to the City's zoning officials, and the application was refused on well-reasoned grounds. Nothing in that process was injurious to the plaintiffs' federal constitutional rights.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment (ECF No. 14) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:   April 18, 2022